NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHN HUTCHISON,**

            **Plaintiff,**

**v.**                                            **Case No. 6:15-CV-704-ORL-22KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff John Hutchison seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 14, and the parties' Joint Memorandum, Doc. No. 20.[1]

## PROCEDURAL HISTORY.

In 2012, Hutchison filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 15. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Revised Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the "Act"). He alleged that he became disabled on January 1, 2011. R. 222, 228.

After his applications were denied originally and on reconsideration, Hutchison asked for a hearing before an Administrative Law Judge ("ALJ"). R. 164. An ALJ held a hearing on July 18, 2013. Hutchison, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 35-82.

After considering the hearing testimony and the evidence in the record, the ALJ issued a decision on October 7, 2013. R. 12-28. The ALJ found that Hutchison was insured under OASDI through September 30, 2014. The ALJ concluded that Hutchison had not engaged in substantial gainful activity since the alleged disability onset date. R. 14.

The ALJ found that Hutchison had vestibular systems disorder, migraine, hypertension, and obesity, which were severe impairments. *Id.* The ALJ found other conditions not to be severe impairments. R. 15, 17. The ALJ concluded that Hutchison did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 18-19.

The ALJ concluded that Hutchison had the residual functional capacity ("RFC") to perform light work, "except with no climbing of ladders, ropes, and scaffolds; no more than occasional climbing or ramps and stairs; no bending, stooping, squatting, crouching, crawling, or kneeling; and must avoid heights, vibrations, temperature extremes, humidity, and dangerous machinery." R. 19. In reaching this conclusion, the ALJ gave limited weight to the functional capacity

NOT FOR PUBLICATION

assessments of J. Douglas Green, Jr., M.D., a treating physician.  R. 25.  The ALJ also concluded that Hutchison's reports of limitations were not entirely credible.  R. 20.

The ALJ determined that Hutchison could not perform his past relevant work as a police officer; an able seaman; and a supervisor, marine sales and service.  R. 26.  Based on the testimony of the VE, the ALJ concluded that Hutchison could perform light, unskilled work available in the national economy, specifically route clerk, collator operator, and marker II.  R. 27. Therefore, the ALJ concluded that Hutchison was not disabled.  *Id.*

Hutchison requested review of the ALJ's decision by the Appeals Council.  R. 7.  On March 6, 2015, the Appeals Council found no reason to review the ALJ's decision.  R. 1.

Hutchison now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Hutchison having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference. Because the main issues in dispute concern limitations arising from disturbance of labyrinthine-

NOT FOR PUBLICATION

vestibular function, I will largely address only that condition and Dr. Green's treatment and opinions regarding limitation arising therefrom.

Hutchison was born in 1965. R. 42. He graduated from high school. R. 43.

During the ALJ's hearing, Hutchison testified that he experienced dizziness, and he had good days and bad days. He reported that sometimes he walked a little sideways, and he sometimes had to balance himself against the shower wall when washing his hair. R. 53. On bad days, he could not get out of bed or he had to sit down. R. 54. Stress and loud noise exacerbated this condition. R. 58, 68. He controlled his vertigo with medication. R. 64. He experienced dizziness virtually every day. R. 64. He also had fatigue, headaches and nausea. R. 65-66. He had trouble with fluorescent lights and walking in narrow and constricted areas. R. 66.

Beginning in 2008, Timothy J. Wierzbicki, M.D. treated Hutchison for complaints of vertigo with chronic dizziness. R. 293-95. He recovered from dizziness when he stopped taking a medication for high blood pressure. Nevertheless, he felt "woozy" when he turned his head quickly. He also had residual tinnitus. R. 292. Dr. Wierzbicki opined that Hutchison had a very benign vestibulopathy, which was probably chronic. *Id.*

In August 2009, Hutchison reported a very severe episode of vertigo that required hospitalization. R. 289. Dr. Wierzbicki scheduled an MRI. R. 291. The MRI showed no distinctive abnormalities. R. 288. Dr. Wierzbicki prescribed medication. *Id.* Hutchison's vertigo had lessened as of February 2, 2010. R. 287.

Dr. Green at Jacksonville Hearing & Balance Institute began treating Hutchison in July 2010 for chronic and episodic dizziness. R. 363-68. Hutchison reported that he had not had an episode of vertigo for one year, but he had occasional episodes of veering to the right. R. 364. Dr. Green

observed a "severe sway" and rotation to the right on three gait and station tests. R. 367-68. Additional testing was performed on July 28, 2010. R. 361-62. A caloric test showed a 22% reduced vestibular response in the right ear and the right vestibular-evoked myogenic potential ("VEMP") was reduced by 35.46% in the right ear. R. 362. On August 11, 2010, Dr. Green opined that the test results showed "incompletely compensated vestibular loss," which he treated with Klonopin. R. 356. Dr. Green also noted sensorineural hearing loss, mild with high frequency loss, and tinnitus. *Id.*

On March 14, 2011, Dr. Green noted that Hutchison had some improvement with medication but he still reported dizziness. R. 350, 352. As of September 12, 2011, Hutchison reported continued intermittent symptoms. R. 350; *accord* R. 348.

Beginning on April 8, 2012, Dr. Green completed a number of functional capacity questionnaires. R. 474-84. He opined that Hutchison has peripheral vestibular disorder with onset of July 28, 2010 determined by testing. He also had tinnitus and mild sensorineural hearing loss. R. 475. He wrote that the episodes of vertigo, dizziness and imbalance were unpredictable and completely debilitating. *Id.* He further noted that Hutchison had a significant abnormality in his gait during episodes of vertigo. R. 477. He stated the vertigo was exacerbated by stress and motion. He opined that Hutchison could only work in low stress with low activity tasks four hours per day. R. 478. He could not work on ladders or at unprotected heights. R. 480.

On June 20, 2012, audiological testing by William J. Eblin, Jr., showed mild hearing loss at high frequency in Hutchison's right ear, moderate hearing loss at high frequency in his left ear and mild hearing loss in his left ear at middle frequency. R. 494.

Hutchison continued to complain of dizziness in February 2013. R. 491. He reported that symptoms of dizziness were manageable and that symptoms of imbalance persisted especially in the dark or in a dimly lit room. *Id.* This treatment note reflects that Hutchison's sensorineural hearing loss was bilateral. *Id.* A June 19, 2013 treatment note from the VA reflects Hutchison's complaints that he was demoralized by chronic vertigo. R. 496.

## ANALYSIS.

Hutchison raises three assignments of error. He contends that the ALJ erred by not finding that his condition met or equaled listing 2.07, which addresses disturbance of labyrinthine-vestibular function. He asserts that the ALJ erred in giving limited weight to the opinions of Dr. Green, who is both a treating physician and specialist in hearing and balance disorders. Finally, he argues that the ALJ erred in finding his reports of limitations arising from his impairments to be not completely credible. Hutchison asks that the Court reverse the final decision of the Commissioner and remand the case for further proceedings.

*Listing 2.07.*

Listing 2.07 provides as follows:

Disturbance of labyrinthine-vestibular function (including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:

    A.    Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and

    B.    Hearing loss established by audiometry.

20 C.F.R. § Pt. 404, subpt. P, app. 1. As discussed above, the record shows by testing that Hutchinson had a disturbance of vestibular labyrinth demonstrated by caloric and other vestibular tests and hearing loss established by audiometry testing. The record also contains Hutchison's

NOT FOR PUBLICATION

reports of balance disturbance, confirmed by gait and station testing performed by Dr. Green, tinnitus, and loss of hearing. Nevertheless, the ALJ's entire explanation of her consideration of whether these impairments were of listing level severity is as follows:

> Despite the claimant's combined impairments, the medical evidence does not document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listing, individually or in combination.

R. 19. This conclusory statement, in light of the evidence in the record arguably supporting a finding that Hutchison's condition met or equaled listing 2.07, is insufficient to state with any measure of clarity the grounds for the ALJ's decision. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

In the Joint Memorandum, counsel for the Commissioner attempts to present the analysis missing from the ALJ's decision. The law in this circuit is clear, however, that "when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens*, 748 F.2d at 1516).

For these reasons, I recommend that the Court find that the first assignment of error is well taken.

NOT FOR PUBLICATION

*Dr. Green's Opinions.*

Dr. Green was one of Hutchison's treating physicians. The record reflects that he is a board certified surgeon and his affiliation with a hearing and balance treatment group supports Hutchison's argument that Dr. Green has expertise in hearing and balance related impairments.

As a treating physician, Dr. Green's opinions were entitled to substantial or considerable weight unless good cause was shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The ALJ gave limited weight to Dr. Green's opinions because (1) "[r]ecent records indicate that the symptoms of dizziness are 'manageable'" and Dr. Green recommended that Hutchison reduce the amount of medication he was taking, (2) Dr. Green completed four questionnaires that are "internally inconsistent with each other," (3) and the ALJ questioned whether Dr. Green provided "the information in the[] forms or used the claimant's statements, as so many of the answers are not supported by his medical notes." R. 25.

The ALJ is correct that Hutchison reported in February 2013 that his symptoms of dizziness were manageable but he also indicated that his symptoms of imbalance persisted especially in the dark or in a dimly lit room. R. 491. While improvement in his symptoms of dizziness might be a basis to find that the limitations arising from dizziness were no longer severe, such improvement would not support giving little weight to Dr. Green's opinion during the earlier alleged disability period.

The ALJ wrote that Dr. Green's opinions were inconsistent because he reported that Hutchinson staggered in one form (R. 476) but noted that Hutchinson had a normal gait in another form (R. 477). R. 25. The ALJ overlooked Dr. Green's note below the finding of normal gait, which reads "significant abnormality during vertigo episodes." R. 477. With this explanation,

NOT FOR PUBLICATION

there is no inconsistency in Dr. Green's opinions. The ALJ also wrote that Dr. Green's opinions were inconsistent because he documented dizziness attacks lasting 12 hours (R. 482) even though his treatment notes state that Hutchison's dizziness was manageable. R. 25. Notably, it was Hutchison, not Dr. Green, who stated that the dizziness was manageable, but the treatment records showed that he still had attacks of dizziness. If the ALJ was unclear on the basis of Dr. Green's opinions, the better practice would have been to recontact Dr. Green for clarification or to send Hutchison for a consultative examination to evaluate whether his condition was of listing level severity, rather than to simply discount Dr. Green's opinions. *See Newsome v. Colvin*, No. CV 112-133, 2014 WL 667800, at *1 (S.D. Ga. Feb. 20, 2014).

For these reasons, I recommend that the Court find that remand is warranted for further proceedings to properly assess Dr. Green's opinions.

*Credibility.*

As his last assignment of error, Hutchison argues that the ALJ erred in reaching the conclusion that his reports of limitations arising from his impairments were not entirely credible (R. 20). If an ALJ decides not to credit a claimant's testimony as to pain and other subjective symptoms, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). The ALJ's credibility finding in this case is as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

9

NOT FOR PUBLICATION

R. 20. This summary statement on the twentieth page of the ALJ's decision provides inadequate guidance to the Court to determine with any specificity which record evidence the ALJ relied on to support this conclusion or the extent to which the ALJ found Hutchison's reports of functional limitations to be credible. "In the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review." *McKinney v. Astrue*, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at *3 (M.D. Fla. Jan. 15, 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840 n.2 (11th Cir. 1992); *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985); *accord* SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996)).

For these reasons, I also recommend that the Court find that Hutchison's third assignment of error is well taken.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the case be **REMANDED** for further proceedings. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

## Notice.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar

an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**Respectfully Recommended** this 18th day of July 2015.

                                       *Karla R. Spaulding*
                                       KARLA R. SPAULDING
                                    UNITED STATES MAGISTRATE JUDGE